# NOTICE OF REMOVAL

# EXHIBIT A
## Part 2 of 5

Complaint
*Helman, et al. v. Marriott International, et al.* Page 31 of 60

Acknowledgment and Joinder in a highly misleading way that obscured what would happen if a board refused to sign it.

105. On information and belief, not knowing it had this power to stop the merger, the Association at St. Thomas signed the Acknowledgment and Joinder, and the "affiliation" was given an effective date of December 5, 2014.

106. Not coincidentally, they failed to produce the 2013 Affiliation Agreement in the related litigation until Plaintiffs discovered its existence in March 2018, years after those cases were first filed and after discovery was well underway, with document production and depositions essentially completed. This resulted in the federal court presiding over the litigation in Aspen Highlands to sanction the Marriott Defendants. *See RCHFU, LLC v. Marriott Vacations Worldwide Corp.*, 2018 WL 6839800 (D. Colo. Dec. 31, 2018). But concealing the 2013 Affiliation Agreement was worth that cost. Indeed, concealment of the 2013 Affiliation Agreement was an integral part of the fraudulent scheme that the Marriott Defendants perpetrated between 2012 and 2018 across the entire RCDC network and in three related cases.

107. Further, providing the 2013 Affiliation Agreement to each of the association boards and their respective members would have revealed its numerous one-sided and unfair terms that transferred significant control from the associations to the Marriott Defendants. For instance, Section X created a ten-year term for the RCDC-MVC merger and that term automatically renews for additional five-year terms. Critically, once an association signed the Acknowledgment and Joinder, it had no further power to withdraw from the merger as termination rights rest solely with the MVW Defendants.

108. Further, the 2013 Affiliation Agreement gave the Marriott Defendants significant use rights in the RCDC properties, above and beyond the use rights given to owners themselves under the Club Declaration. The Marriott Defendants secured the right during certain periods to use the Ritz-Carlton Great Bay for "marketing and sales of Interests, vacation ownership interests at other resort condominiums or club resorts, or such other vacation ownership or multisite vacation ownership or membership plans developed or marketed by [MVC] or its affiliates."

Complaint
*Helman, et al. v. Marriott International, et al.*                                   Page 32 of 60

109.    The Marriott Defendants further secured the right to use exchange time at Ritz-Carlton Great Bay "*for any purpose*, including, without limitation, in [MVC]'s sole and absolute discretion, any purpose related to marketing, selling, or promoting the [MVC] Program or other timeshare or fractional projects developed, marketed or offered by [MVC]'s affiliates." (Emphasis added).

110.    Furthermore, it is customary for such exchange agreements to specify a formula for allocating exchange time between various programs. But section 7.8 of the 2013 Affiliation Agreement gave MVC the sole and absolute discretion to calculate the value of exchange time, meaning that the Marriott Defendants could and likely would use 100% of the exchange time committed by Ritz-Carlton Great Bay owners. Likewise, while it is customary for exchange agreements to fairly allocate costs between affiliating exchanges, the 2013 Affiliation Agreement has no such provision. Indeed, the cost allocation was grossly one-sided and likely to lead to increased costs for Ritz-Carlton Great Bay owners. Section 7.1 of the Agreement reserved for the Marriott Defendants the right to charge Ritz-Carlton Destination Club owners for use of the exchange program, but explicitly prohibited Lion & Crown — which had the power to affiliate the RCDCs with external programs — from charging Marriott Vacation Club members fees for exchanging into the Ritz-Carlton Destination Club.

### K.    The Marriott Defendants Manufacture a Financial Crisis to Overcome Opposition to the RCDC Merger

111.    On October 27, 2008, the Association wrote to all owners at the Ritz-Carlton Great Bay informing them of a Special Assessment due to a problem with delinquent maintenance dues. The Association emphasized the impact of the mortgage crisis, calling the delinquencies, foreclosures and units for sale as "at an all-time high," causing values to decline. The letter cited almost $1 million in unpaid dues, about half of which was delinquent 2008 owner dues, with the remainder from prior years.

112.    The October 27, 2008 letter failed to inform Plaintiffs and the proposed Class that the overwhelming percentage of delinquent owners had also defaulted on their mortgages —

Complaint
*Helman, et al. v. Marriott International, et al.*                                          Page 33 of 60

mortgages in which RC Development or another Marriott Defendant subsidiary was the mortgagee. Moreover, the letter did not reveal that RC Hotels VI and RC Development were delaying foreclosure proceedings. This slow-walking of foreclosures was a substantial cause of the $1,000,000 (and growing) delinquency in maintenance dues owed to the Association.

113.    RC Development's delay in foreclosing violated its own policies regarding judicial foreclosures which, on information and belief, requires a judicial foreclosure action to be filed within 80 days of default. But the Marriott Defendants had reasons to delay them. First, by delaying foreclosures, the Marriott Defendants avoided having to pay the maintenance dues owed on foreclosed units. Second, the delays created a financial crisis that the Marriott Defendants used as leverage, including to obtain approval for their merger from Plaintiffs and the proposed Class.

114.    On information and belief, by the end of the year 2010, the Association had accrued over $3,000,000 in unpaid maintenance fees. The Marriott Defendants' decision not to foreclose on delinquent owners caused the great majority of this bad debt expense. On November 14, 2011, at the behest of the Association, Plaintiffs and the proposed Class voted to amend the Club Declaration to allow the Association to rent the fractionals owned by delinquent owners with the proceeds to be used by the Association to cover delinquent maintenance dues. This helped but did not entirely solve the problem. A perception remained that delinquent dues threatened serious harm to the Ritz-Carlton Great Bay.

   L.    ***RC Hotels (Virgin Islands), Inc v. B&T Cook Family Partners, Ltd and Great Bay Condominium Owners Association***

115.    It was not lost on the Association that the Marriott Defendants were slow-walking foreclosures. On or about July 25, 2011, the Association had attorney James M. Derr, Esq. file a counterclaim in a foreclosure suit filed on behalf of the RC Hotels VI. The Association alleged that the Marriott Defendants had violated their fiduciary duties by delaying the filing of that particular foreclosure action for seven months from default, resulting in injury to the Association in the form of accruing unpaid maintenance fees.

Complaint
*Helman, et al. v. Marriott International, et al.*                                    Page 34 of 60

116.     On July 20, 2012, the court rejected a motion to dismiss filed by the Marriott Defendants. By that time, delinquent maintenance dues were in excess of $4,000,000, of which the great majority resulted from the Marriott Defendants' failure to timely foreclose. In a published opinion, the court agreed that pursuant to the management agreement prepared by the Marriott Defendants, RC Hotels VI assumed all of the duties of the Board of Directors, and that as a consequence, RC Hotels VI assumed a fiduciary relationship with the Association. The court stated:

> that a reasonable person can infer that RC Hotels did not exercise the proper standard of care required as Great Bay's managing agent, *since the sooner a foreclosure action is filed, the sooner the parties can obtain the monies owed on the Note and for assessment of fees. The longer it takes for the commencement of the foreclosure action, the more assessments accrue, Thus, . . . the Court finds that Great Bay's claim for breach of fiduciary duty is plausible on its face.*"

*RC Hotels (Virgin Islands), Inc v. B&T Cook Family Partners, Ltd and Great Bay Condominium Owners Association,* 57 V.I. 3, * 11 (V.I. Super. July 20, 2012) (emphasis added).

117.     Neither the Association nor the Marriott Defendants ever disclosed this significant win to Plaintiffs and the proposed Class. Had they known the Marriott Defendants owed a fiduciary duty to promptly foreclose, they may not have voted in the manner described below. The obvious alternative was to sue the Marriott Defendants for breach of fiduciary duty and recover a judgment for unpaid maintenance dues. As far as Plaintiffs and the proposed Class knew, there was still a brewing financial crises resulting from delinquent maintenance dues.

118.     By the end of 2013, approximately 138 owners at Ritz-Carlton Great Bay were delinquent on their Marriott-held mortgages and had also defaulted on maintenance dues owed to the Association, with nearly 100 of them delinquent for multiple years. The total amount of uncollected maintenance dues approached $7 million, even though, as noted, the Association had begun mitigating losses through rentals.

**M.     The Marriott Defendants Game a Vote at the Ritz-Carlton Great Bay**

119.     In January 2013, the Marriott Defendants approached the St. Thomas Association board with a proposal to solve the perceived financial crisis for which the Marriott Defendants

Complaint
*Helman, et al. v. Marriott International, et al.*                                    Page 35 of 60

were liable under the *B&T Cook Family Partners* ruling. The Marriott Defendants proposed that, in exchange for an owner vote in favor of the merger, they would begin foreclosure proceedings on each fractional interest in which the member had defaulted on a Marriott Vacations Worldwide-affiliated mortgage and begin paying the delinquent maintenance dues. Among other things, the vote would allow the Marriott Defendants to transfer the foreclosed and unsold inventory to the NATO land trust for use by MVC members.

120.     On February 22, 2013, Association President John Doyle and Treasurer Thomas Doyle travelled to Marriott Vacations Worldwide's headquarters in Orlando, Florida to discuss this proposal. The Marriott Defendants conceded that the Club Declaration potentially blocked them from including the Ritz-Carlton Great Bay in the RCDC-MVC merger, even if they ignored Derr's warning that they were breaching their fiduciary duties and attempting unjust enrichment. The Marriott Defendants therefore sought the vote of owners described herein.

121.     On December 13, 2013, the Association board sent a letter to Plaintiffs and members of the proposed Class recommending that they vote in favor of amending the Club Declaration as requested by the Marriott Defendants. The letter, which was drafted and/or edited by the Marriott Defendants, failed to disclose that the consideration Marriott Vacations Worldwide was proposing for the favorable vote was illusory. Not only did the MVW Defendants have a fiduciary duty to promptly foreclose and concomitantly start paying maintenance fees, but also the Association and its members had a viable claim against the MVW Defendants for the approximately $7 million in unpaid maintenance dues that had accrued by then.

122.     In addition, on December 18 and 19, 2013, the Marriott Vacations Worldwide held a webinar for the owners at the Ritz-Carlton Great Bay in which they attempted to convince Plaintiffs and the proposed Class to vote for the RCDC-MVC merger.

123.     Further, on or about said dates, the Marriott Defendants provided owners with a set of Frequently Asked Questions. Question 6 asked: "If this program is approved, is there an end period to The Ritz-Carlton Destination Club taking over delinquent members or, once approved, is this program ongoing?" And Marriott answered: "The Ritz-Carlton Destination Club will seek

Complaint
*Helman, et al. v. Marriott International, et al.*                    Page 36 of 60

liens and foreclosures on new delinquent Members and pay the annual assessments on new delinquent interests once the foreclosure is achieved or a deed in lieu of foreclosure (DIL) is obtained. . . ." Similarly, Question 9 asked: "How many total fractions are currently involved with this transaction (i.e., how many total delinquencies and foreclosures are there)?" Marriott answered: "There are approximately 130 delinquent fractions included in the Agreement. If the proposal is approved, over the next two years, The Ritz-Carlton Destination Club would cover Club dues for all of the approximately 130 delinquent fractional interests for which The Ritz-Carlton Destination Club receives title. This would relieve the Association of approximately one million dollars of ongoing annual bad debt expense beginning with the 2015 Club budget."

124.    Both the webinars and FAQs were materially misleading, and omitted material information that the MVW Defendants were under a fiduciary obligation to provide, including the fact that the consideration Marriott Vacations Worldwide was proposing for the favorable vote was illusory. The Marriott Defendants also failed to disclosure the numerous one-sided and unfair terms contained in the undisclosed 2013 Affiliation Agreement that transferred permanent and significant control from the Association to the Marriott Defendants.

125.    Further, although the Marriott Defendants owed Plaintiffs and the proposed Class fiduciary duties, the Marriott Defendants concealed from Plaintiffs and the proposed Class that a national appraisal firm hired by the Marriott Defendants had concluded that the merger would negatively impact the owners' fractional interest values.

126.    The vote took place on January 26, 2014.  Faced with misrepresentations and incomplete information, Plaintiffs and the proposed Class voted to approve the merger.

127.    The Marriott Defendants emailed Plaintiffs and the proposed Class two days later, stating in part:

> We are pleased to advise that the proposal extended by your Board and The Ritz-Carlton Destination Club has been accepted and as a result of the vote, the Association will receive funds in relation to the current delinquent Member inventory that will greatly assist in the Association's financial position and in return The Ritz-Carlton Destination Club will have the ability to convey fractional interests in the Club to the MVC Trust. St. Thomas Members will also have the opportunity later this year to exchange with the Marriott Vacation Club Destinations Exchange Program if they choose to do so.

Complaint
*Helman, et al. v. Marriott International, et al.*                              Page 37 of 60

128.    The effective date of the RCDC-MVC affiliation at St. Thomas was in December 2014, with access provided soon thereafter.

129.    In summary, the Marriott Defendants obtained approval for the merger at the Ritz-Carlton Great Bay by means of a fraudulently obtained vote of owners. More specifically, the Marriott Defendants engaged in proxy-fraud by including false and misleading statements in communications with the owners while omitting other material facts. Among other things, this violated the Marriott Defendants' fiduciary duty of utmost good faith and candor to Plaintiffs and the proposed Class.

## N.    Marriott International and MVC Profit Greatly at the Expense of RCDC Owners

130.    The results of the above-described conduct, culminating in the 2014 merger, were disastrous for Plaintiffs and the proposed Class. Among other harms, their fractional interest values declined such that they can barely give them away.[7]

131.    The coerced, fraudulently obtained merger of the Ritz-Carlton Great Bay with the MVC, along with the other misconduct alleged herein, including the slow-walking of foreclosures by the Marriott Defendants and the resulting increase in maintenance dues to Plaintiffs and the proposed Class, caused the values of Plaintiffs' and Class members' fractionals to be far lower than the otherwise would be. These values already were fragile given the Marriott Defendants' decision to abandon the luxury RCDC product line in service of building up the MVC points program. In contrast, the association of the highly regarded luxury Ritz-Carlton Great Bay with the lower-ranked Marriott Vacation Club program had a halo effect for that program, increasing

---

[7] As an MVC member posting on the popular timeshare blog tuggbbs.com noted in November 2015, "The timeshare sales team still pitch [St. Thomas] as the Ritz Carlton Destination Club, but admit that it is really just MVC. . . . It is great for us that this property is now in the Trust, as the points chart is now fixed, and we benefit from the contractual access to the hotel. It is unfortunate for the original Ritz owners as they fund the MFs [maintenance fees] on the property that is now accessible to us." https://tuggbbs.com/forums/index.php?threads/ritz-carlton-st-thomas.235224/

Complaint
*Helman, et al. v. Marriott International, et al.*                              Page 38 of 60

its prestige and allowing it to sell more MVC points at higher prices and earn hundreds of millions

in ill-gotten revenues, which this lawsuit seeks to disgorge.

132.    The loss in value post-affiliation was also caused in part by potential fractional

purchasers' understanding that an influx of MVC members who had no long-term investment at

the St. Thomas resort would lead to increased wear and tear from increased turnover and a

diminishment in the resort's renowned peace and calm.

133.    Since this vote, the value of Great Bay fractionals has continued to decline, while

the Marriott Defendants have reaped huge profits by using the allure of the RCDC to sell MVC

points to the masses at a much lower price point. Marriott Vacations Worldwide's share price rose

since the beginning of the re-engineering to above $150.

## CLASS ALLEGATIONS

134.    Plaintiffs bring this action on behalf of themselves and, under Virgin Islands Rules

of Civil Procedure 23(b), as representatives of the following Class:

> *All entities and individuals (including their assignees) who, at any time from May 22, 2002
> to January 26, 2014, purchased a 1/12 fractional interest at the Ritz-Carlton Great Bay,
> except that the following individuals and entities are excluded from the class: (a) those
> who financed their purchases through any Defendant and whose fractional interest was
> foreclosed upon, (b) any defendants named in this Complaint and any affiliate, parent, or
> subsidiary of any defendant; any successor or assignee of any defendant; any entity in
> which any defendant has a controlling interest; and any officer, director, or employee of
> any defendant.*

135.    Plaintiffs reserve the right to amend this "Class Definition" if discovery and further

investigation reveal that the proposed Class should be expanded or otherwise modified.

136.    The Class is sufficiently numerous in that it numbers at least in the hundreds,

rendering joinder of all members of the Class impracticable.

137.    Plaintiffs' claims are typical of the claims of the other members of the Class which

they seek to represent under Rule of Civil Procedure 23(a)(3) because Plaintiffs and each member

of the proposed Class have been subjected to the same wrongful conduct and have been damaged

in the same manner.

Complaint
*Helman, et al. v. Marriott International, et al.*                              Page 39 of 60

138.    Plaintiffs will fairly and adequately protect the interests of the proposed Class. Plaintiffs are represented by competent counsel experienced in the prosecution of complex class actions. Plaintiffs' interests coincide with, and are not antagonistic to, those of the proposed Class.

139.    Questions of law and fact common to all class members predominate over any questions affecting only individual class members. Predominating common questions include, without limitation:

a.    Whether any of the Marriott Defendants violated any provision of the Criminally Influenced and Corrupt Organizations Act, 14 V.I.C. § 600, *et. seq.*

b.    Whether any of the Marriott Defendants owed fiduciary duties to Class members and breached those duties.

c.    Whether any of the Marriott Defendants committed constructive fraud or fraudulent concealment.

d.    Whether any of the Marriott Defendants aided and abetted or conspired with other defendant to commit the wrongful conduct alleged herein.

e.    Whether any of the Marriott Defendants are liable for breach of the implied covenant of good faith and fair dealing and/or breached any implied provisions of the purchase contract.

f.    Whether any of the Marriott Defendants violated any provision of the Consumer Protection Law of 1973 and the Consumer Fraud and Deceptive Business Practices Act.

g.    Whether Plaintiffs and members of the proposed Class suffered a diminution in value of their fractional interests, and if so, by how much.

h.    Whether any of the Marriott Defendants were unjustly enriched by the conduct described herein, and if so, by how much.

i.    Whether Class members are entitled to disgorgement of the Marriott Defendants' ill-gotten profits, and if so, the amount of disgorgement.

j.    Whether Class members are entitled to other forms of equitable relief, including imposition of a constructive trust.

k.    Whether Class members are entitled to punitive damages, reasonable attorneys' fees, pre-judgment interest, post-judgment interest, and/or costs of suit.

140.    A class action is superior to any other available method for the fair and efficient adjudication of this controversy. Class treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously and efficiently. There are no difficulties likely to be encountered in the management of this lawsuit that would preclude

Complaint
*Helman, et al. v. Marriott International, et al.*                                        Page 40 of 60

its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of the controversy.

## COUNT I

### *Violations of 14 V.I.C. § 605(a) of CICO Against All Defendants*

141.    Plaintiffs incorporate by reference the allegations contained in the preceding and subsequent paragraphs of this Complaint as if fully set forth herein.

142.    The MII and MVW Defendants formed an associated-in-fact enterprise to infiltrate and control the Association and perpetrate a scheme to defraud that began just before the spin-off of the MVW Defendants from Marriott International in November 2011 and that continued through the January 26, 2014 vote and thereafter as well.  As more fully alleged elsewhere in this Complaint, the MII and MVW Defendants accomplished this unlawful scheme to defraud by using their control over the Association, its board, and its communications with Plaintiffs and the proposed Class to manipulate them into voting for the RCDC-MVC merger based on a real or perceived financial crisis that the Marriott Defendants manufactured by slow-walking foreclosures in violation of their fiduciary duties. In addition, the MVW Defendants, acting at the behest and direction of the MII Defendants, drafted and sent other highly misleading communications to Plaintiffs and the proposed Class that concealed material facts.

143.    The MII and MVW Defendants, and each of them, are and at all relevant times were "persons" within the meaning of 14 V.I.C. § 604(l) that conducted and/or participated in, directly or indirectly, the affairs of the CICO enterprises (i.e., the associated-in-fact enterprise and the wrongfully infiltrated and controlled Association) alleged herein through a pattern of racketeering activity.

144.    At all relevant times, the Association was an "enterprise" within the meaning of 14 V.I.C. § 604(h) that the other Defendants infiltrated, operated, and controlled to perpetrate the scheme to defraud and other wrongful conduct alleged herein. In addition, and alternatively, the MII and MVW Defendants, and each of them, associated together for the common purpose of engaging in the ongoing course of racketeering/criminal activity alleged in this Complaint. They

Complaint
*Helman, et al. v. Marriott International, et al.*                                    Page 41 of 60

formed and operated an associated-in-fact enterprise to perpetrate the scheme to defraud and other

wrongful conduct alleged in this Complaint (the "associated-in-fact enterprise"). Each member of

the associated-in-fact enterprise participated in the conduct of this enterprise in furtherance of a

common purpose that they all agreed upon (i.e., the scheme to defraud alleged in this Complaint).

145.    Defendants agreed to function and did function as a unit and according to specified

roles, and each played specific roles to achieve that agreed upon purpose. Among other things,

beginning in 2011 and continuing to the present:

a.      Using the governing documents that Marriott International and its subsidiaries
        fashioned to ensure continuing control over nominally independent fractional
        owners associations, such as the Association in St. Thomas, the MII Defendants
        (through RC Hotels VI, RC Hotel Co., and otherwise) and the MVW Defendants
        (using MORI personnel acting in the name of RC Management and other MVW
        subsidiaries that had no actual employees of their own) manipulated the fractional
        owners associations in St. Thomas, San Francisco, Tahoe, and Aspen into
        supporting, approving, consenting to, and/or acquiescing to the RCDC-MVC
        affiliation.

b.      The MII Defendants (through RC Hotels VI, RC Hotel Co., and otherwise) and the
        MVW Defendants (using MORI personnel acting in the name of RC Management
        and other MVW subsidiaries that had no actual employees of their own) controlled
        the flow of information to the owners associations, including the Association in St.
        Thomas, the agendas for board meetings, and most other aspects of association
        governance.

c.      The MII Defendants (through RC Hotels VI, RC Hotel Co., and otherwise) and the
        MVW Defendants (using MORI personnel acting in the name of RC Management
        and other MVW subsidiaries that had no actual employees of their own) edited
        communications from the boards of the various owners associations to RCDC
        owners, including communications from the Association board in St. Thomas to
        Plaintiffs and the proposed Class.

d.      In consultation with and at the direction of Marriott International, the MVW
        Defendants sent communications to RCDC owners, including Plaintiffs and the
        proposed Class, that misstated material facts and concealed others.

e.      Marriott International directed RC Hotels VI (and other MII subsidiaries) to slow-
        walk foreclosures of the many fractional owners in St. Thomas that financed their
        purchase through Marriott and fell behind on their mortgages and their maintenance
        dues. The MII Defendants were joined in this effort by Marriott Vacations
        Worldwide, which directed RC Development (and other MVW subsidiaries) to
        slow-walk these foreclosures. This was actually done by MORI personnel because
        RC Development and other MVW subsidiaries had no actual employees of its own.

Complaint
*Helman, et al. v. Marriott International, et al.*                                    Page 42 of 60

    f.     Marriott Vacation Worldwide and MORI, acting in the name of Cobalt, Lion & Crown, and MRTC, three MVW subsidiaries with no employees or existence of their own, executed a confusing web of affiliation agreements, including the 2013 Affiliation Agreement and the Acknowledgment and Joinder, to effect the merger.

    g.    Once Plaintiffs and the proposed Class were deceived into voting for the RCDC merger, Marriott International had RC Hotels VI (and other MII subsidiaries), and Marriott Vacations Worldwide had RC Development (and other MVW subsidiaries) transfer foreclosed and unsold inventory to the NATO land trust for use by Marriott Vacation Club members.

146.    The MII and MVW Defendants acted in concert and conspired to deprive Plaintiffs and the proposed Class of the value of their fractional interests at the Ritz-Carlton Great Bay. In addition, the Marriott Defendants deprived Plaintiffs and the proposed Class of maintenance dues that the Marriott Defendants would have had to pay to the Association had they timely foreclosed on delinquent owners, as their fiduciary duties required them to do. Plaintiffs and the proposed Class were required to pay increased maintenance dues to make up for the shortfall in Association funds created by the Marriott Defendants' breach of their obligations, and Plaintiffs and the proposed Class lost the benefit of maintenance dues that the Marriott Defendants would have had to pay had they timely foreclosed.

147.    In furtherance of this scheme to defraud and other wrongful conduct, the MII Defendants and the MVW Defendants participated in, directly or indirectly, the affairs of the CICO enterprises alleged herein (i.e., the Association and the associated-in-fact enterprise) through a pattern of criminal activity within the meaning of 14 V.I.C. § 604(j). This pattern consisted of predicate acts of mail and wire fraud. 18 U.S.C. §§ 1341 and 1343. In addition, the Marriott Defendants engaged in predicate violations of the Travel Act, 18 U.S.C. § 1952, with interstate and foreign travel to and from the U.S. Virgin Islands, Bethesda, Maryland, and Orlando, Florida, among other places, all in furtherance of this scheme to defraud. Specific predicate acts include but are not limited to the following:

    a.    During the weeks surrounding May 24, 2012, Lee Cunningham and agents of MORI, RC Hotel Co., and other members of the CGC committee met in person, emailed, and communicated by phone about various re-engineering steps, such as transferring the remaining unsold developer inventory to the NATO Trust and

Complaint
*Helman, et al. v. Marriott International, et al.*                               Page 43 of 60

       obtaining Marriott International's approval for selling points. They predicted that the process could take a year to a year and a half to complete, extending beyond the subsequent vote at St. Thomas to affiliate with MVC in exchange for the Marriott Defendants taking action on the foreclosures. They also noted the concern about whether the transfer could violate St. Thomas's governing documents' anti-commercialization provisions, and discussed other communications.

b.   On September 12, 2012, David Mann participated in the annual Marriott International/Marriott Vacations Worldwide senior executives meeting in Bethesda, Maryland, which other members joined by phone, and discussed next steps in the re-engineering, including the delinquencies at the St. Thomas and how they harmed the other owners. Additional Marriott International agents participating on information and belief included Tim Grisius, Kevin Kimball, Ken Rehman, and Carl Berquist.

c.   Marriott International received the attorney's letter alleging breach of contract and breach of fiduciary duty, among other violations, at the Aspen Highlands resort, and on November 28, 2012, discussed it via conference call and an in-person meeting in Orlando, Florida, with Marriott Vacations Worldwide executives, along with other RCDC re-engineering updates.

d.   Marriott International's David Mann and Kevin Kimball participated the October 2, 2013, Marriott International/Marriott Vacations Worldwide Senior Executive Quarterly Meeting in Bethesda, Maryland, which some participants joined by phone, discussing, among other topics, the Re-engineering Plan update, furthering the scheme.

e.   Marriott International participated in the June 25, 2014, Marriott International/Marriott Vacations Worldwide Senior Executive Quarterly Meeting in Bethesda, Maryland, at which Cunningham once again gave an RCDC Reengineering Plan update. They discussed that the unsold developer inventory at St. Thomas was in the process of going into the Trust, effectuating the scheme. Members joined by phone.

f.   RC Hotel Co. exercised Marriott International's authority over the Associations' governance by emailing, on October 17, 2013, the Aspen board various documents for a pre-read before its vote on the affiliation with the MVC—without sending the 2013 Affiliation agreement. As a distinct predicate act, on August 8, 2013, John Hearns, the vice president of the RC Hotel Co, emailed the letter and survey responses for the APCO member survey to all the RCC General Managers, noting that Sobeck would discuss the results on an upcoming brand conference call. APCO's detailed reports about its member study and focus groups show that the possibility of the MVC affiliation was a serious concern among Ritz-Aspen members. Despite learning about these grave member concerns, Marriott decided to advance its own interests at the expense of Plaintiffs' interests by imposing the MVC affiliation. The Marriott Defendants never gave the reports to any RCDC Association boards, including the St. Thomas board, who were being asked for

Complaint
*Helman, et al. v. Marriott International, et al.*                    Page 44 of 60

input on whether their clubs should affiliate. Recognizing that the owners likely
would reject affiliation if they knew they had the power to do so, the Marriott
Defendants concocted the foreclosure-related settlement plan at St. Thomas.

g.   On information and belief, shortly after the January 26, 2014 vote, RC Hotels VI
transferred or participated in the transfer of RCDC fractional inventory to the
NATO land trust, which transfers were accomplished using the mails and/or
interstate wires.

h.   On January 3, 2012, Cunningham emailed the Action Item/Status Summary
circulated at a recent Strategic Council meeting to other Marriott executives. This
summary was linked to the Defendants' movement of RCDC inventory into the
NATO trust.

i.   At the Marriott International/Marriott Vacations Worldwide Senior Executive
Quarterly meeting on May 30, 2012, attended in person in Orlando, Florida, and by
phone, the Defendants, including Cunningham, confirmed the plan to stop selling
Ritz-Carlton products, along with confirming other steps in the re-engineering
process.

j.   On or about August 17, 2012, Cunningham sent the follow-up email to owners
about Babich's July 2012 letter announcing the merger.

k.   On August 28 and 30, 2012, Steve Weisz and Cunningham held the conference call
for Ritz-Carlton Members and then issued the FAQs.

l.   Marriott International received the attorney's letter alleging breach of contract and
breach of fiduciary duty, among other violations, at the Aspen Highlands resort,
and on November 28, 2012, discussed it via conference call and an in-person
meeting in Orlando, Florida, with Marriott Vacations Worldwide executives, along
with other RCDC re-engineering updates.

m.   Cunningham emailed all RCDC owners on May 14, 2013, promising a vote on the
affiliation question.

n.   Lion & Crown, in concert with other Defendants, helped make the MVW-RCDC
affiliation permanent by adding unexpected language in the Lion & Crown
enrollment agreement in May 2013 after at least one board had reviewed the
original provisions. For example, Cunningham engaged in both email and phone
conversations with the board of the Association at the Aspen Highlands on June 4,
2013, in furtherance of the scheme, as did Sobeck.

o.   On July 23, 2013, Cunningham emailed RCDC owners reminding them to complete
the APCO survey.

p.   Although the Marriott Defendants owed Plaintiffs and the proposed Class fiduciary
duties, the Marriott Defendants concealed from Plaintiffs and the proposed Class
that they had learned on November 20, 2013, from a national appraisal firm they
had hired that the merger would negatively impact the owners' fractional interest
values. RCDC/RC Management's Kim Frates-Mazzilli and MVW's Ben Pierce
circulated this report by email on that date.

Complaint
*Helman, et al. v. Marriott International, et al.*                              Page 45 of 60

q.   On December 11, 2013, Sobeck responded to an email from St. Thomas's John Doyle that expressed concerns about the Defendants' actions at the other resorts by stating, as turned out to be false, that inventory would not be moved into the MVC trust unless the Aspen owners voted on the decision. A vote never took place, just a misleading survey. Sobeck had also emailed the Aspen board members in April 16, April 29, and May 11, 2013 about a "vote" at the Aspen resort.

r.   Pursuant to the scheme perpetrated by the MII and MVW Defendants, the Association used the mails and interstate wires to file an amendment to a declaration on January 28, 2014, stating that the Club Declaration did not prohibit fractional interests from being moved into the NATO land trust for MVC's use.

s.   On information and belief, shortly after the January 26, 2014 vote, RC Development transferred or participated in the transfer of RCDC fractional inventory to the NATO land trust, which transfers were accomplished using the mails and/or interstate wires.

t.   On July 17, 2012, Babich sent the letter on behalf of Cobalt announcing the intention to merge the MVC and RCDC.

u.   Lion & Crown: On November 26, 2014, Babich on behalf of Lion & Crown, wrote MRTC setting the effective date of the St. Thomas Association's at December 5, 2014.

v.   On information and belief, the NATO land trust participated in the transfer of RCDC fractional inventory to that trust, which transfers were accomplished using the mails and/or interstate wires.

w.   Additionally, on January 14, 2015, the NATO trust, convened a conference call to discuss voting as owners on the Association. This communication constituted two predicate acts, involving both email and phone calls. Participants included Julie Kennedy-Rick, Julie; Jeff Comfort; Keith Kocarek; Laura Cobb; Lori Colaiuta; and Steven Novack.

x.   At the Marriott International/Marriott Vacations Worldwide Senior Executive Quarterly meeting on May 30, 2012, attended in person in Orlando, Florida, and by phone, Marriott Defendants executives and personnel, including David Mann, confirmed the plan to stop selling Ritz-Carlton products, along with confirming other steps in the re-engineering process.

y.   On September 12, 2012, Lee Cunningham traveled to the annual Marriott International/Marriott Vacations Worldwide senior executives meeting in Bethesda, Maryland, and discussed next steps in the re-engineering, including the delinquencies at the St. Thomas and how they harmed the other owners. Additional representatives of Marriott Vacations Worldwide included on information and belief John Geller, Jim Hunter, Lani Kane-Hanan, and Steve Weisz.

z.   Cunningham traveled to the October 2, 2013, Marriott International/Marriott Vacations Worldwide Senior Executive Quarterly Meeting in Bethesda, Maryland, and gave a Re-engineering Plan update, furthering the scheme. MVW's John Geller, Jim Hunter, and Lani Kane-Hana also participated.

Complaint
*Helman, et al. v. Marriott International, et al.*                                    Page 46 of 60

aa.    Cunningham traveled to the June 25, 2014, Marriott International/Marriott
       Vacations Worldwide Senior Executive Quarterly Meeting in Bethesda, Maryland,
       and once again gave an RCDC Reengineering Plan update. They discussed that the
       unsold developer inventory at St. Thomas was in the process of going into the Trust,
       effectuating the scheme.

bb.    On January 28, 2014, Randy Mercer sent Ritz-Carlton Great Bay owners an email
       summarizing the results of the vote.

cc.    Sobeck travelled to the Virgin Islands on multiple occasions to addend meetings of
       the Association board, including on January 26, 2014. Other MII and MVW
       personnel travelled to the Virgin Islands to attend other board meetings as well,
       including one on April 29, 2013.

dd.    In the runup to the January 26, 2014 vote, the Marriott Defendants sent a series of
       communications to members, as discussed in the January 17, 2014 Business
       Review Report.

ee.    On December 18 and 19, 2013, the MVW Defendants held a webinar for the owners
       at the Ritz-Carlton Great Bay in which they attempted to convince Plaintiffs and
       the proposed Class to vote for the RCDC-MVC merger. A few days later, they sent
       a mass communication to Ritz-Carlton Great Bay owners regarding these webinars.

ff.    The MVW Defendants held a meeting with John Doyle and Tom Doyle, including
       on or about February 23, 2013 and May 20, 2013, to discuss the vote, requiring
       interstate travel for all or some of the participants.

148.   Because Cunningham not only served MVW but also led and acted in the name of

and on behalf of alter egos Lion & Crown, Cobalt, RC Development, RC Management, MRTC,

and perhaps other MVW Defendants as well, each predicate act alleged here against Cunningham

is also incorporated against those other MVW Defendants. Similarly, because Sobeck acted in the

name and on behalf of Marriott Vacations Worldwide, MORI, RC Management, RC Development,

Cobalt, and perhaps other MVW Defendants as well, each predicate act alleged against Sobeck is

incorporated against these other MVW Defendants too. Similarly, Kim Frates-Mazzilli served both

in an RC Development role and as an agent of RC Management, so allegations involving her apply

to both of those defendants. More generally, all or most of the predicate acts alleged herein were

committed by the MII and MVW Defendants by implication and chain of authority.

149.   The Marriott Defendants, and each of them, agreed to commit these predicate acts,

agreed to aid and abet their commission by other members of the associated-in-fact enterprise,

Complaint
*Helman, et al. v. Marriott International, et al.*                                       Page 47 of 60

and/or agreed that some members of that enterprise would commit the predicate acts for the benefit of all members of the associated-in-fact enterprise.

150.    Plaintiffs and members of the proposed Class suffered harm and/or injury to their business or property as a direct and proximate result of the Marriott Defendants' wrongful conduct. Specifically, the Marriott Defendants' unlawful conduct has destroyed the value of Plaintiffs' separately-deeded property interests, and the private residence club that formed the heart of those property interests. In addition, Plaintiffs and members of the proposed Class have been forced to pay increased maintenance dues as a direct and proximate result of the Marriott Defendants' wrongful conduct.

151.    Plaintiffs specifically seek treble damages, costs of suit, and attorneys' fees, as authorized by CICO. In addition, pursuant to the Court's authority under 14 V.I.C. § 607(a) to issue "any appropriate order or judgment," a constructive trust should be imposed on the Marriott Defendants' ill-gotten gains to prevent their unjust enrichment, and they should be required to disgorge all things of value they obtained as a result of their violations of CICO and the scheme to defraud alleged herein in accordance with the Restatement (Third) of Restitution and Unjust Enrichment § 43 (2011).

## COUNT II

### *Violations of 14 V.I.C. § 605(b) of CICO Against All Defendants*

152.    Plaintiffs incorporate by reference the allegations contained in the preceding and subsequent paragraphs of this Complaint as if fully set forth herein.

153.    In violation of 14 V.I.C. § 605(b), the MII and MVW Defendants acquired and maintained control over the Association and the separately-deeded property interests owned by Plaintiffs and other members of the proposed Class through the conduct alleged elsewhere in this Complaint.

154.    Also in violation of 14 V.I.C. § 605(b), the NATO land trust (and through it the MVW Defendants) wrongfully acquired the RCDC fractional inventory that the other Marriott Defendants (including RC Hotels VI and RC Development) transferred to it following the January

Complaint
*Helman, et al. v. Marriott International, et al.*                                          Page 48 of 60

26, 2014 vote, each of which transfers were also predicate acts of mail and wire fraud, as they were, on information and belief, accomplished using the mails and/or interstate wires.

155.    Plaintiffs and the proposed Class suffered the harm and/or injury to their business or property alleged above as a direct and proximate result of the Marriott Defendants' wrongful conduct. Plaintiffs specifically seek treble damages, costs of suit, and attorneys' fees, as authorized by CICO. In addition, pursuant to the Court's authority under 14 V.I.C. § 607(a) to issue "any appropriate order or judgment," a constructive trust should be imposed on the Marriott Defendants' ill-gotten gains to prevent their unjust enrichment, and they should be required to disgorge all things of value they obtained as a result of their violations of CICO and the scheme to defraud alleged herein in accordance with the Restatement (Third) of Restitution and Unjust Enrichment § 43.

## COUNT III

### *Violations of 14 V.I.C. § 605(c) of CICO Against All Defendants*

156.    Plaintiffs incorporate by reference the allegations contained in the preceding and subsequent paragraphs of this Complaint as if fully set forth herein.

157.    Fractional inventory obtained through foreclosure was one of the proceeds that the MII and MVW Defendants derived, directly or indirectly, from their pattern of criminal activity alleged herein. The MII and MVW Defendants invested these RCDC fractionals in their operation of the Marriott Vacation Club, which qualifies as an enterprise within the meaning of 14 V.I.C. § 607(a)(1) by transferring them into the NATO land trust in violation of 14 V.I.C. §§ 605(c).

158.    Plaintiffs and the proposed Class suffered the harm and/or injury to their business or property alleged above as a direct and proximate result of the Marriott Defendants' wrongful conduct. Plaintiffs specifically seek treble damages, costs of suit, and attorneys' fees, as authorized by CICO. In addition, pursuant to the Court's authority under 14 V.I.C. § 607(a) to issue "any appropriate order or judgment," a constructive trust should be imposed on the Marriott Defendants' ill-gotten gains to prevent their unjust enrichment, and they should be required to disgorge all things of value they obtained as a result of their violations of CICO and the scheme to defraud

Complaint
*Helman, et al. v. Marriott International, et al.*                              Page 49 of 60

alleged herein in accordance with the Restatement (Third) of Restitution and Unjust Enrichment §
43.

159.    Further, to prevent the Marriott Defendants from continuing to benefit from their
wrongdoing, the Court should order pursuant to 14 V.I.C. § 607(a)(1) that all fractionals
transferred to the NATO land trust be transferred out of that trust so they are no longer available
for use by Marriott Vacation Club members.

## COUNT IV

### *Conspiracy to Violate CICO, 14 V.I.C. § 605(d), Against All Defendants*

160.    Plaintiffs incorporate by reference the allegations contained in the preceding and
subsequent paragraphs of this Complaint as if fully set forth herein.

161.    The Marriott Defendants, and each of them, by their words and/or actions,
objectively manifested an agreement to participate in, directly or indirectly, the scheme to defraud,
predicate acts, and violations of 14 V.I.C. §§ 605(a)-(c) alleged above and thereby conspired with
one another in violation of 14 V.I.C. § 605(d).

162.    Each of the Marriott Defendants agreed to perform these wrongful acts and each
acted the material ways alleged herein to accomplish their wrongful purpose, including concerted
action. The predicate acts and other conduct alleged elsewhere herein constitute overt acts in
furtherance of this conspiracy.

163.    Plaintiffs and the proposed Class suffered the harm and/or injury to their business
or property alleged above as a direct and proximate result of the Marriott Defendants' wrongful
conduct. Plaintiffs specifically seek treble damages, costs of suit, and attorneys' fees, as authorized
by CICO. In addition, pursuant to the Court's authority under 14 V.I.C. § 607(a) to issue "any
appropriate order or judgment," a constructive trust should be imposed on the Marriott Defendants'
ill-gotten gains to prevent their unjust enrichment, and they should be required to disgorge all
things of value they obtained as a result of their violations of CICO and the scheme to defraud
alleged herein in accordance with the Restatement (Third) of Restitution and Unjust Enrichment §
43.

Complaint
*Helman, et al. v. Marriott International, et al.*                                    Page 50 of 60

## COUNT V

### *Breach of Fiduciary Duty Against All Defendants*

164.    Plaintiffs incorporate by reference the allegations contained in the preceding and
subsequent paragraphs of this Complaint as if fully set forth herein.

165.    The Marriott Defendants, and each of them, assumed fiduciary duties to Plaintiffs
and the proposed Class based on their control of the Association and its board, and on the high
degree of control they otherwise exercised over Plaintiffs' and the proposed Class' separately-
deeded fractional property interests, as more fully alleged above.[8]

166.    As fiduciaries, the Marriott Defendants were required to act with utmost good faith
and in the best interests of Plaintiffs and the proposed Class and refrain from any actions that
would cause harm to Plaintiffs and the proposed Class, or that allow the Marriott Defendants to
profit at their expense.

167.    The Marriott Defendants, and each of them, breached their fiduciary duties by
advancing their own interests at Plaintiffs' and the proposed Class' expense, as more fully alleged
elsewhere herein.

168.    As a direct and proximate result of their breaches of their fiduciary duties, the
Marriott Defendants, and each of them, proximately caused damage to Plaintiffs and the proposed
Class, including by destroying the value in their fractionals, in an amount to be proven at trial. In
addition, a constructive trust should be imposed on the Marriott Defendants' ill-gotten gains to
prevent their unjust enrichment, and they should be required to disgorge all things of value they
obtained as a result of their breaches of their fiduciary duties and the scheme to defraud alleged
herein in accordance with the Restatement (Third) of Restitution and Unjust Enrichment § 43.

---

[8] *See RCHFU, LLC v. Marriott Vacations Worldwide Corp.*, 2018 WL 1535509, at *6 (D. Colo. Mar.
29, 2018) ("The Court finds that the plaintiffs have sufficiently alleged that the Management
Agreement entrusted RC Management with control over plaintiffs' property sufficient to create
fiduciary duties"); *Reiser v. Marriott Vacations Worldwide Corp.*, 2017 WL 569677, at *4–5 (E.D.
Cal. Feb. 13, 2017) (similar ruling).

Complaint
*Helman, et al. v. Marriott International, et al.*                                      Page 51 of 60

169.    For purposes of this cause of action, each of the Marriott Defendants either qualifies
as a "conscious wrongdoer" within the meaning of Restatement (Third) of Restitution and Unjust
Enrichment §§ 43, 51-53 or knowingly aided and abetting one or more other defendants who so
qualify.

## COUNT VI

### *Constructive Fraud Against All Defendants*

170.    Plaintiffs incorporate by reference the allegations contained in the preceding and
subsequent paragraphs of this Complaint as if fully set forth herein.

171.    The Marriott Defendants, and each of them, had a duty as fiduciaries to act honestly,
with full disclosure and loyalty to the Plaintiffs as their principals.

172.    The Marriott Defendants, and each of them, knew that their uniform
communications to Plaintiffs and the proposed Class regarding the RCDC-MVC merger and the
vote thereon failed to disclose material facts that they had a duty to disclose as fiduciaries and
otherwise, including but not limited to:

      a. The fact that the Marriott Defendants knew they would reap massive profits while
          severely damaging plaintiffs once the merger went through;

      b. The fact they had slow-walked foreclosures to manufacture a financial crisis for the
          Association;

      c. The fact that their fiduciary duties required them to promptly foreclose even
          without the deal that owners, including Plaintiffs and the proposed Class, voted on
          in January 2014; and

      d. The fact that the affiliation would be governed by an undisclosed 2013 Affiliation
          Agreement that provided the Marriott Defendants with a series of one-sided
          provisions that were highly damaging to Plaintiffs and the proposed Class and the
          Ritz-Carlton Great Bay, including a permanent affiliation between RCDC and
          MVC. These onerous provisions were designed to give unfair advantages to the
          Marriott Defendants and MVC members over RCDC members.

173.    Based on the materiality of the concealed facts, there is a presumption of reliance
on the part of Plaintiffs and the proposed Class, negating the need for individualized testimony
from members of the proposed Class.

Complaint
*Helman, et al. v. Marriott International, et al.*                                   Page 52 of 60

174.    By virtue of their non-disclosure of material facts described above and herein, the Marriott Defendants were able to take undue advantage of Plaintiffs and the proposed Class. The Marriott Defendants' misrepresentations and non-disclosure of the material facts described above and elsewhere herein were material in that they were likely to have a substantial effect on how Plaintiffs and members of the Class voted on January 26, 2014.

175.    As a direct and proximate result of their constructive fraud, the Marriott Defendants, and each of them, proximately caused damage to Plaintiffs and the proposed Class, including by destroying the value in their fractionals, in an amount to be proven at trial. In addition, a constructive trust should be imposed on the Marriott Defendants' ill-gotten gains to prevent their unjust enrichment, and they should be required to disgorge all things of value they obtained as a result of their breaches of their fiduciary duties and the scheme to defraud alleged herein in accordance with the Restatement (Third) of Restitution and Unjust Enrichment § 43.

176.    For purposes of this cause of action, each of the Marriott Defendants either qualifies as a "conscious wrongdoer" within the meaning of Restatement (Third) of Restitution and Unjust Enrichment §§ 43, 51-53 or knowingly aided and abetting one or more other defendants who so qualify.

## COUNT VII

### *Fraud by Concealment Against All Defendants*

177.    Plaintiffs incorporate by reference the allegations contained in the preceding and subsequent paragraphs of this Complaint as if fully set forth herein.

178.    Because they were fiduciaries and also because they made uniform, class-wide statements that were misleading without disclosure of the concealed material facts, the Marriott Defendants, and each of them, had a duty to disclose all material facts relating to the RCDC-MVC merger and the January 26, 2014 vote.

179.    The Marriott Defendants, and each of them, knew that their class-wide communications with Plaintiffs and the proposed Class would be likely to mislead if the concealed material facts were not included in those uniform communications, but the Marriott Defendants

Complaint
*Helman, et al. v. Marriott International, et al.*                               Page 53 of 60

intentionally concealed these material facts because they intended to mislead Plaintiffs and the
proposed Class into agreeing to the RCDC-MVC merger.

180.    Based on the materiality of the concealed facts, there is a presumption of reliance
on the part of Plaintiffs and the proposed Class, negating the need for individualized testimony
from members of the proposed Class.

181.    As a direct and proximate result of their fraud by concealment, the Marriott
Defendants, and each of them, proximately caused damage to Plaintiffs and the proposed Class,
including by destroying the value in their fractionals, in an amount to be proven at trial.

182.    In addition, a constructive trust should be imposed on the Marriott Defendants' ill-
gotten gains to prevent their unjust enrichment, and they should be required to disgorge all things
of value they obtained as a result of their breaches of their fiduciary duties and the scheme to
defraud alleged herein in accordance with the Restatement (Third) of Restitution and Unjust
Enrichment § 43.

183.    For purposes of this cause of action, each of the Marriott Defendants either qualifies
as a "conscious wrongdoer" within the meaning of Restatement (Third) of Restitution and Unjust
Enrichment §§ 43, 51-53 or knowingly aided and abetting one or more other defendants who so
qualify.

## COUNT VIII

### *Aiding and Abetting Breach Tort Against All Defendants*

184.    Plaintiffs incorporate by reference the allegations contained in the preceding and
subsequent paragraphs of this Complaint as if fully set forth herein.

185.    The Marriott Defendants, and each of them, knowingly aided and abetted in the
breaches of fiduciary duty, constructive fraud, and fraud by concealments committed by the other
defendants by providing assistance to, counseling, commanding, inducing, or providing the means
to achieve the wrongful conduct alleged elsewhere in this Complaint, and or otherwise caused
those wrongful acts to be done.

Complaint
*Helman, et al. v. Marriott International, et al.*                    Page 54 of 60

186.    As a direct and proximate result of their aiding and abetting in the other defendants'
breach of fiduciary duty, constructive fraud, and fraud by concealment, the Marriott Defendants,
and each of them, damaged Plaintiffs in an amount to be proven at trial.

187.    In addition, a constructive trust should be imposed on the Marriott Defendants' ill-
gotten gains to prevent their unjust enrichment, and they should be required to disgorge all things
of value they obtained as a result of their breaches of their fiduciary duties and the scheme to
defraud alleged herein in accordance with the Restatement (Third) of Restitution and Unjust
Enrichment § 43.

188.    For purposes of this cause of action, each of the Marriott Defendants either qualifies
as a "conscious wrongdoer" within the meaning of Restatement (Third) of Restitution and Unjust
Enrichment §§ 43, 51-53 or knowingly aided and abetting one or more other defendants who so
qualify.

<u>**COUNT IX**</u>

*Breach of Contract/Implied Covenant Against*
*RC Hotels VI and RC Club St. Thomas, Inc.*

189.    Plaintiffs incorporate by reference the allegations contained in the preceding and
subsequent paragraphs of this Complaint as if fully set forth herein.

190.    The standardized purchase agreement and related documents such as the Offering
Plan (collectively the "purchase agreement") constitute an enforceable contract between Plaintiffs
and the proposed Class and the seller, RC Hotels VI, and the organizer RC Club St. Thomas, which
provided financing to certain purchasers.

191.    Plaintiffs and members of the proposed Class performed all, or substantially all, of
the significant things that the purchase agreement required them to do, and/or they were excused
from doing those things.

192.    The purchase agreement includes an implied promise that RC Hotels VI and RC
Club St. Thomas would not take any action that would radically alter the nature of the RCDC, the
Ritz-Carlton Great Bay, or the separately-deeded property interests purchased at premium prices

Complaint
*Helman, et al. v. Marriott International, et al.*                          Page 55 of 60

by Plaintiffs and the proposed Class, nor any action that would violate the reasonable expectations
of Plaintiffs and the proposed Class under the purchase agreement. Plaintiffs reasonably expected
that these defendants might make certain changes, but would maintain the fundamental character
of the RCDC, the Ritz-Carlton Great Bay, and the fractionals at that club.

193.    The wrongful conduct of RC Hotels VI and RC Club St. Thomas alleged elsewhere
in this Complaint — in particular their merger of the RCDC with the MVC — constitutes a material
breach of implied promises in the purchase agreement, and a violation of the implied covenant of
good faith and fair dealing that the law incorporates into that contract.

194.    RC Hotels VI and RC Club St. Thomas have frustrated Plaintiffs' and the proposed
Class's reasonable expectations under the purchase agreement, deprived them of the value of their
fractionals and the fruits of the purchase agreement, and/or defeated the purpose of that contract.

195.    As a result of this breach of the purchase agreement, Plaintiffs and the proposed
Class are entitled to damages in an amount to be proved at trial.

## COUNT X

### *Violation of the Consumer Protection Law of 1973, 12A V.I.C. §§ 101, et seq.*

196.    Plaintiffs incorporate by reference the allegations contained in the preceding and
subsequent paragraphs of this Complaint as if fully set forth herein.

197.    The Virgin Islands Consumer Protection Law protects the consuming public and
legitimate business enterprises from those who engage in misleading, deceptive, or unfair acts or
practices in the course of trade or commerce.

198.    The Marriott Defendants, and each of them, and any co-conspirators engaged, and
continue to engage, in a misleading, deceptive, and unfair trade or commerce practice regarding
the management of the fractionals at the Ritz-Carlton Great Bay.

199.    The Marriott Defendants and any co-conspirators' trade and commerce practices
misrepresented to, deceived, or unfairly influenced objective and reasonable consumers owning
property in the Virgin Islands as more fully alleged elsewhere herein, include by slow-walking
foreclosures, manufacturing a real or perceived financial crisis for the Association, and then

Complaint
*Helman, et al. v. Marriott International, et al.*                                      Page 56 of 60

proposing that Plaintiffs and the proposed Class members vote for the RCDC-MVC merger — a merger that Defendants knew would devalue Plaintiffs' and proposed class members' property interests — in exchange for a "solution" to that crisis, i.e., an agreement by the Marriott Defendants to foreclose on delinquent properties and then start paying maintenance fees as they were already required to do.

200.     The consumer protection laws of the Virgin Islands are to be liberally construed to protect the people and businesses of the Virgin Islands.

201.     Individual reliance is not an element of proof under the consumer protection statutes of the Virgin Islands because the laws are intended to be enforced by class action. Rather, the standard is that of an objective and reasonable consumer in the Virgin Islands.

202.     The Marriott Defendants' and any co-conspirators' wrongful actions additionally constitute a misleading, deceptive and unfair trade or commerce practice in that they unfairly took advance of the consumers' lack of knowledge, ability, experience, or capacity when marketing, selling, developing, and managing fractional and timeshare products in the Virgin Islands.

## COUNT XI

### *Violation of the Consumer Fraud and Deceptive Business Practices Act,*
### *12A V.I.C. §§ 301, et seq.*

203.     Plaintiffs incorporate by reference the allegations contained in the preceding and subsequent paragraphs of this Complaint as if fully set forth herein.

204.     The purpose of the Consumer Fraud and Deceptive Business Practices Act is to protect the consuming public from those who engage in fraudulent and deceptive acts in the course of trade or commerce.

205.     The Marriott Defendants engaged in, and continue to engage in, fraudulent and deceptive trade practice in the marketing, sale, developing, and managing of fractional and timeshare programs.

206.     The Marriott Defendants' trade practices misrepresented, deceived, or unfairly influenced objective and reasonable consumers in the Virgin Islands by marketing, selling,

developing, and managing fractional and timeshare products in the Virgin Islands in a manner that harmed Plaintiffs and the proposed Class.

207.    The consumer protection laws of the Virgin Islands are to be liberally construed to protect the people and businesses of the Virgin Islands.

208.    Individual reliance is not an element of proof under the consumer protection statutes of the Virgin Islands because the laws are intended to be enforced by class action. Rather, the standard is that of an objective and reasonable consumer in the Virgin Islands.

209.    The Marriott Defendants' and any co-conspirators' wrongful actions additionally constitute a misleading, deceptive and unfair trade or commerce practice in that they unfairly took advance of the consumers' lack of knowledge, ability, experience, or capacity of consumers when marketing, selling, developing, and managing fractional and timeshare products in the Virgin Islands.

## COUNT X

### *Violation of the Consumer Protection Law of 1973, 12A V.I.C. §§ 101, et seq.*

210.    Plaintiffs incorporate by reference the allegations contained in the preceding and subsequent paragraphs of this Complaint as if fully set forth herein.

211.    As a result of their own wrongful conduct or the wrongful conduct of other defendants, the Marriott Defendants, and each of them, received, innocently or knowingly, things of value that are traceable to Plaintiffs and the proposed Class and that rightfully belong to Plaintiffs and the proposed Class.

212.    Plaintiffs and the proposed Class thus conferred benefits on the Marriott Defendants, and each of them, that should be restored to Plaintiffs and the proposed Class. It would be inequitable and unjust for the Marriott Defendants to be permitted to retain these things of value.

213.    The Marriott Defendants should be compelled to disgorge to Plaintiffs and the proposed Class all improperly obtained things of value obtained by them as a result of the wrongful

Complaint
*Helman, et al. v. Marriott International, et al.*                                                Page 58 of 60

conduct alleged herein.  A constructive trust should be imposed upon all such things of value in

order to prevent the unjust enrichment of the Marriott Defendants, and each of them.

## FRAUDULENT CONCEALMENT

214.    Throughout the Class Period, the Marriott Defendants and their co-conspirators

intended to and did affirmatively and fraudulently conceal their wrongful conduct and the

existence of their unlawful actions from Plaintiffs and the proposed Class, and intended that their

communications with each other and their resulting actions be kept secret from Plaintiffs and the

proposed Class.

215.    Plaintiffs and the proposed Class had no knowledge of the wrongful conduct

alleged herein or of any of the facts that might have led to discovery thereof, until in or about 2018,

when the Plaintiffs contacted lawyers and learned of the 2013 Affiliation Agreement and the *B&T*

*Cook Family Partners* decision described above.

216.    Plaintiffs and the proposed Class could not have discovered the wrongful conduct

alleged herein at any earlier date by the exercise of reasonable due diligence because of the

deceptive practices and techniques of secrecy employed by the Marriott Defendants to avoid

detection and affirmatively conceal their actions.

217.    Based on the foregoing, Plaintiffs and the proposed Class were unaware that the

Marriott Defendants had a duty to foreclose on the delinquent properties and also that they had an

independent right to reject the RCDC-MVC merger and were injured by such concealment.

## DAMAGES TO PLAINTIFFS AND MEMBERS OF THE PROPOSED CLASS

218.    Plaintiffs cannot state at this time the precise amount of damages sustained by them

and other members of the proposed Class. A precise determination of damages will require

discovery from the Marriott Defendants and any co-conspirators. Further damages will include

damages by statute, and punitive damages for intentional wrongful conduct. Plaintiffs allege that

the damages are substantial.

## NOTICE OF PUNITIVE DAMAGES

Complaint
*Helman, et al. v. Marriott International, et al.*                                   Page 59 of 60

219.   The Marriott Defendants' breaches of fiduciary duties, constructive fraud, fraudulent concealment, conspiracies, and unfair and deceptive trade practices, among other alleged wrongful misconduct alleged herein, were outrageous, done with wrongful motive, and recklessly indifferent to the rights of Plaintiffs and the proposed Class.

220.   These bad acts create a profound and pervasive negative effect on all consumers by higher prices.

221.   Further, the Defendants' business practices rob profits from businesses that operate lawfully in the Territory, making the opening and growth of new business, operating lawfully, much more difficult and burdensome.

222.   Such wrongful conduct undermines consumer confidence in the Virgin Islands, impairs the free market, discourages lawfully operating businesses and entrepreneurs, and reduces future sustainable investment in the Virgin Islands.

223.   Punitive damages are appropriate to deter and punish this willful and intentional misconduct, which affects all residents and businesses in the Territory negatively. The deterrence of punitive damages will discourage future wrongful business practices by others.

## JURY TRIAL DEMAND

224.   On behalf themselves and all others similarly situated, Plaintiffs demand a trial by jury, pursuant to 5 V.I.C. § 358 and Rule 38(b) of the Virgin Islands Rules Civil Procedure, of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and behalf of all others similarly situated, pray for judgment against the Marriott Defendants, and each of them, and request as follows:

A.   That the Court determine that this action may be maintained as a class action under Rule 23(b)(2) and (b)(3) of the U.S. Virgin Islands Rules of Civil Procedure; that the Court determine that Plaintiffs are adequate and appropriate representatives of the proposed Class; that the Court designate Plaintiffs' attorneys as lead counsel for the proposed Class; and that the Court direct that the best notice practicable under the circumstances be given to members of the proposed Class pursuant to Rule 23(c)(2).

Complaint
*Helman, et al. v. Marriott International, et al.*                                    Page 60 of 60

    B.    That the Court adjudge and decree that the Marriott Defendants violated CICO, owed and breached fiduciary duties, committed constructive fraud and fraud by concealment, aided and abetted the other defendants' wrongdoing, and violated the Consumer Protection Law of 1973 and the Consumer Fraud and Deceptive Business Practices Act.

    C.    That the Court enter judgment for Plaintiffs and members of the proposed Class against the Marriott Defendants and any co-conspirators, and each of them, jointly and severally, for damages according to proof and trebling of those damages as allowed by law, along with statutory damages, costs, and reasonable attorneys' fees.

    D.    That the Marriott Defendants and any co-conspirators, their respective affiliates, successors, transferees, assignees, as well as the officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on their behalf, be restrained from, in any manner, continuing, maintaining, or renewing the contract, combination, or conspiracy alleged herein, or engaging in any other contract, combination, or conspiracy having a similar purpose or effect, and adopting or following any practice, plan, program, or device having a similar purpose or effect.

    E.    That the Marriott Defendants and any co-conspirators be subject to an award of punitive damages.

    F.    That an accounting be performed to account for the Marriott Defendants' ill-gotten gains and that all such ill-gotten gains be disgorged to Plaintiffs and the proposed Class.

    G.    That a constructive trust be imposed on the assets, property, contracts, revenues, income and profits of the Marriott Defendants and disgorgement of all benefits received by Defendants.

    H.    Pre-judgment and post-judgment interest to the extent allowed by law.

    I.    That the Court grant such additional equitable or legal relief as may be deemed just and proper.

Dated: January 24, 2019                          Respectfully submitted.

J. Russell B. Pate, Esq. (V.I. Bar No. 1124)
THE PATE LAW FIRM
P.O. Box 890, St. Thomas, USVI 00804
Tel: (340) 777-7283
Em: Pate@SunLawVI.com
Em: SunLawVI@gmail.com
Fax: (888) 889-1132