IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

ALAN HELMAN, *et al.*,  )
  )
  )
  )
 Plaintiffs,  )
  )  Civil No. 2019-36
 v.  )
  )
MARRIOTT INTL., INC., *et al.*,  )
  )
  )
 Defendants.  )

**MEMORANDUM OPINION AND ORDER**

Before the Court is "Plaintiffs' Motion to Dismiss the Marriott Defendants' Counterclaims for Indemnification and Unjust Enrichment." [ECF 121]. Defendants filed a response,[1] to which plaintiffs (collectively, the "Helman parties") replied. [ECFs 141, 161]. The Court writes for the parties, so only facts necessary for determining the motion will be addressed.[2]

**I.  LEGAL STANDARDS**

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).

Further, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, the complaint "must state enough

---

[1] Counter-plaintiffs are Marriott Vacations Worldwide Corporation ("MVW"), RC Hotels (Virgin Islands), Inc., ("RC Hotels, VI"), RC St. Thomas, LLC, and the Ritz-Carlton Management Company, L.L.C. ("RC Management"). [ECF 110] at 35. These parties will collectively be referred to as "Marriott."

[2] For detailed background information, see the Court's August 5, 2020 Memorandum Opinion and Order [ECF 101] at 1-9.

*Helman, et al. v. Marriott Intl., Inc., et al.*
Civil No. 2019-36
Page 2

facts to state a claim to relief that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (citations and quotation marks omitted). Moreover, a court need not "accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).

Finally, the purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir.1993). "In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff." *Dicesare v. Office of Children, Youth & Families*, 2012 WL 2872811, at *2 (W.D. Pa. July 12, 2012) (citing *U.S. Express Lines, LTD. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002)); *accord Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

Defendants removed this case from the Superior Court of the Virgin Islands to this Court under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§1332, 1446, and 1453. *See* [ECF 1]. Because there is diversity jurisdiction, Marriott's common law counterclaims are reviewed under the law of the Virgin Islands. *See Sheridan v. iHeartMedia, Inc.*, 255 F. Supp. 3d 767, 769-70 (N.D. Ill. 2017) (applying Illinois law on the grounds that CAFA claims brought in Illinois are "governed by state law like any other claim brought under diversity jurisdiction").

## II. DISCUSSION

Marriott endeavors to bring two claims against the Helman parties: Contractual Indemnification (Count I) and Unjust Enrichment and Set-Off Demand (Count II). [ECF 110] at 43-45. Marriott bases the first claim on an indemnity provision in the Management Agreement (the "Management Agreement") dated May 22, 2002 between RC Hotels VI and the Great Bay Condominium Owners' Association, Inc. (the "GBCOA"). *Id.* ¶¶ 17, 21.[3] Marriott's second claim arises from benefits the Helman parties allegedly received by virtue of the Settlement Agreement and Limited Release dated December 2, 2013 between GBCOA and RC St. Thomas LLC, and an earlier 2009 settlement agreement. *Id.* ¶¶ 25-26, 41. The Court will address each claim in turn.

A. <u>Contractual Indemnification</u>

In *In re Catalyst Third-Party Litigation*, the Superior Court of the Virgin Islands concluded, following a *Banks* analysis,[4] that "the soundest rule for the Virgin Islands is to follow the majority approach and adopt the express negligence doctrine" for indemnification claims. 2020 WL 1862216, at *25 (V.I. Super. Apr. 13, 2020). "Under the doctrine of express negligence, the intent of the parties must be specifically stated within the four corners of the contract." *Id.* (quotation marks omitted). Thus, "whether an indemnification agreement covers A's negligence, B's negligence, or A through Z's negligence is for the contracting parties to decide." *Id.* at *26 (quotation marks omitted). Finally, "since a written agreement whereby one party agrees to

---

[3] The counterclaim begins on page 35 of [ECF 110]; the numbered paragraphs in the counterclaim are not consecutive to those in the answer. The Court cites in this memorandum opinion to the paragraph numbers in the counterclaim.

[4] When the Supreme Court of the Virgin Islands has not yet announced a common law rule that addresses an issue, courts in the Virgin Islands must conduct a so-called *Banks* analysis. *See Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 977-78 (V.I. 2011). Such an analysis requires consideration of "(1) whether any Virgin Islands courts have previously adopted a particular rule; (2) the position taken by a majority of courts from other jurisdictions; and (3) most importantly, which approach represents the soundest rule for the Virgin Islands." *Nicholas v. Damian-Rojas*, 62 V.I. 123, 129 (V.I. Super. 2015) (citations omitted).

indemnify another party is essentially a contract, contract law governs." *Id.* at *11. In sum, to state a claim for indemnification, plaintiff must allege that (1) there exists an indemnification agreement—a contract with specific terms that clearly and unambiguously evidence the parties' intent that one party indemnify the other party; (2) the indemnification agreement creates a duty; (3) there was a breach of that duty; and (4) damages resulted from that breach.

The Helman parties argue that Marriott's indemnification claim "fails" due to the plain language of the Management Agreement's indemnity clause. [ECF 121] at 5-11. Specifically, they contend that (1) the "Management Agreement expressly excludes indemnification for willful misconduct like the wrongdoing at issue in this case;" (2) the "indemnity clause does not apply to first-party claims;" and (3) "Plaintiffs' claims are not based on conduct governed by the Management Agreement." *Id.* at 5, 8, 10.

Marriott has adequately pled a claim for indemnification. First, Marriott alleges the existence of an indemnification provision within the Management Agreement, which evidences the parties' intent that members of the RC Club, St. Thomas indemnify the Management Company and affiliated entities:

> Neither the Management Company nor any affiliated entity shall be liable to the [GBCOA] or the Members for any loss or damage not caused by the Management Company's gross negligence or own willful misconduct, and the [GBCOA] and its Member will and do hereby indemnify and save harmless the Management Company and any other affiliated entities from any such liability for all injury, loss, damages, costs and expenses (including attorney's fees) collectively, the ("Damages") arising from any cause whatsoever arising out of or resulting from Management Company Actions under this Agreement, unless such Damages shall be caused by Management Company's own gross negligence or willful misconduct.

[ECF 110] ¶ 21 (quoting Section 16 of the Management Agreement). Next, Marriott states that the indemnification provision applies equally to (1) RC Hotels VI; (2) RC Management; (3) RC

St. Thomas LLC; and (4) "all other defendants named in the SAC, which were or are 'affiliated entities' of RC Hotels VI, RC Management, and RC St. Thomas LLC." *Id.* ¶ 37. Third, Marriott alleges that because certain of plaintiffs' claims—that the Management Company "failed to promptly foreclose upon the GBCOA's maintenance-fee liens on delinquent fractional interests and failed to assume responsibility for those fractional interests' maintenance fees"—are based on the language of the Management Agreement, "[t]he defendants named in the SAC are thus expressly entitled to indemnification from Plaintiffs (as Members of the RC Club, St. Thomas) for any damages arising from Plaintiffs' claims concerning the Management Company's alleged conduct." *Id.* ¶ 38. Lastly, Marriott "seek[s] indemnification from Plaintiffs for all 'injury, loss, damages, costs and expenses (including attorney's fees)'" in the event they are found liable to plaintiffs. *Id.* ¶ 39. In sum, Marriott has satisfied Rule 8(a)(2). Marriott identified the existence of an indemnification provision within the Management Agreement that imposes a duty upon the GBCOA and its members to indemnify the Management Company and its affiliates from any liability arising out of the Management Company's actions under the contract. Further, Marriott alleged that in the event it is found liable to plaintiffs for various failures under the Management Agreement, the Helman parties are obliged to indemnify Marriott.

The Helman parties raise three issues with the indemnification claim. Their first argument—that the indemnification provision in the Management Agreement does not cover willful misconduct—is beside the point. As an initial matter, that plaintiffs characterize defendants' behavior as "willful conduct," [ECF 121] at 7, does not make it so.[5] Whether

---

[5] The Helman parties rely on *Spear v. Fenkell*, 2015 WL 3643571, at *7 (E.D. Pa. June 12, 2015), and state that the court dismissed an "indemnification claim based on Pennsylvania's public policy against indemnification for willful misconduct." [ECF 121] at 7. In *Spear*, however, a court had already found in another case that the party seeking indemnification had engaged in willful misconduct. 2015 WL 3643571, at *20-21. The court did not dismiss indemnification claims where no liability finding had yet been made. Thus, the *Spear* case is inapposite.

*Helman, et al. v. Marriott Intl., Inc., et al.*
Civil No. 2019-36
Page 6

defendants' actions in fact constitute gross negligence or willful misconduct has not yet been determined.

The Helman parties' second argument—that Marriott cannot seek indemnification from them because the Management Agreement's indemnification provision only applies to third-party claims—is also premature. In *Travelers Indemnity Co. v. Dammann & Co., Inc.*, on which the Helman parties rely, the United States Court of Appeals for the Third Circuit did not rule out the possibility that first-party indemnification claims were viable under New Jersey law: "To be sure, given the expansive meaning of 'indemnity' and New Jersey law's respect for the ability of parties to contract freely . . . , we cannot hold that first-party indemnification claims such as the one [sought] . . . are categorically barred as a matter of law in New Jersey absent direct authority to that effect." 594 F.3d 238, 255 (3d Cir. 2010). Moreover, although the *Travelers* Court concluded that the first-party indemnification claim was "fatally flawed," it did so by focusing on the "plain language" of the contract at issue there. 594 F.3d at 255.

In the instant case, although the Management Agreement states—in language similar to that considered in *Travelers*—that "the [GBCOA] and its Members will and do hereby indemnify and save harmless the Management Company and any other affiliated entities from any such liability . . . resulting from the Management Company's Actions," that language is preceded by the following additional language: "Neither the Management Company nor any affiliated entity shall be liable to the [GBCOA] or the Members for any loss or damage not caused by the Management Company's gross negligence or own willful misconduct." In other words, in this case, the Management Agreement's indemnification provision may apply to first-party claims or it may not, depending upon how the contract is ultimately interpreted. In any event, it is not appropriate for the Court to make such a finding at this stage of the proceedings. *See Intervet, Inc.*

*v. Mileutis, Ltd.*, 2016 WL 740267, at *8-9 (D.N.J. Feb. 24, 2016) (denying plaintiff's motion to dismiss defendant's claim for lost profits based on a contract because the relevant indemnification provision was susceptible to more than one interpretation).

The Helman parties' final argument,[6] that their claims are not based on conduct governed by the Management Agreement, is—like their other arguments—not relevant to the Court's consideration of the adequacy of Marriott's articulation of an indemnification claim. According to the Helman parties, even if the indemnification provision applies to first-party claims, the claims here are not based on the Management Company's actions pursuant to the Management Agreement. [ECF 121] at 10. Rather, their "claims are based on Marriott's manipulation of the vote and implementation of the merger," and "the financial crisis that resulted from slow-walking foreclosures was just one tool Marriott used to carry out that manipulation." *Id.* Again, how the Helman parties characterize the essence of their claims in their brief is not controlling. Whether Marriott's counterclaim for indemnification ultimately has merit is simply not yet before the Court, and the Court cannot now conclude that Marriott's indemnification counterclaim would be futile.

B.  <u>Unjust Enrichment and the Set-Off Demand</u>

To state a claim for unjust enrichment under the law of the Virgin Islands, a plaintiff must allege: "(1) that the defendant was enriched, (2) that such enrichment was at the plaintiff's expense, (3) that the defendant had appreciation or knowledge of the benefit, and (4) that the circumstances were such that in equity or good conscience the defendant should return the money or property to

---

[6] In the Helman parties' reply, they argue that Marriott's indemnification counterclaim cannot succeed because defendants failed to name the GBCOA and the rest of its members as cross-defendants. [ECF 161] at 8. However, as this argument was made for the first time in Marriott's reply, the Court need not consider it. *See United States v. Kolodesh*, 787 F.3d 224, 230 n.3 (3d Cir. 2015) (noting that arguments raised for the first time in a reply brief are deemed waived and need not be considered).

the plaintiff." *Walters v. Walters*, 60 V.I. 768, 779-80 (V.I. 2014); *accord Whitaker v. Martin*, 2020 WL 7481783, at *5 (D.V.I. Dec. 18, 2020).

Here, Marriott has adequately pled a claim for unjust enrichment. First, Marriott alleges that the Helman parties were enriched:

> Under the terms of the Settlement Agreement, RC St. Thomas LLC agreed to provide the GBCOA and its Members with significant financial benefits, including, among other things, paying the outstanding maintenance fees associated with certain delinquent fractional interests; purchasing certain other delinquent fractional interests from the GBCOA for significant amounts and paying all future maintenance fees associated with those fractional interests; and assuming responsibility for all Maintenance-Fee Lien Foreclosures and associated costs. [] These covenants ultimately cost RC St. Thomas LLC substantial amounts to perform under the Settlement Agreement, which directly benefitted the GBCOA and its Members.

[ECF 110] ¶ 26.

Next, Marriott alleges that "Plaintiffs, as Members of RC Club St. Thomas, have received significant financial benefits from RC St. Thomas LLC under the Settlement Agreement and the Confidential Settlement Agreement and Release dated September 2009." *Id.* ¶ 41; *see also* ¶¶ 33-34. Marriott has therefore sufficiently articulated that the Helman parties were enriched at Marriott's expense.

Marriott has also adequately stated the third element of an unjust enrichment claim. Implicit in paragraph 26, quoted above, is the Helman parties' knowledge of the benefits they received under the terms of the settlement agreements. Further, Marriott expressly states that "[o]n January 26, 2014, an overwhelming majority of the Members who participated in the vote (and a clear majority of the entire RC Club, St. Thomas membership) voted to approve the Declaration Amendments, thereby indicating their satisfaction with GBCOA's settlement with RC St. Thomas

LLC, entered into by the GBCOA on the Members' behalf." [ECF 110] ¶ 32. Marriott has sufficiently alleged that the Helman parties appreciated or knew of the benefit they received.

Finally, Marriott satisfied the pleading requirements of the fourth element by stating that the circumstances require the return of monies unjustly obtained:

> In the event Defendants are found to be liable to Plaintiffs on any of their claims, any monies Defendants are found to owe to Plaintiffs should be set-off by the significant monetary amounts RC St. Thomas LLC previously provided to Plaintiffs under the aforementioned settlement agreements. If it is determined that the settlement agreements should be rescinded, then Defendants are entitled to recoup the significant financial benefits RC St. Thomas LLC provided to Plaintiffs pursuant to those agreements, as unjust enrichment.

[ECF 110] ¶ 42.

The Helman parties challenge the viability of this counterclaim on multiple grounds. First, the Helman parties complain that Marriott's statement of enrichment is only phrased in the "hypothetical." [ECF 121] at 4. To the contrary, Marriott expressly avers that the Helman parties have already "received significant financial benefits."[7]

Further the Court does not find, as the Helman parties urge, that Marriott inadequately pled that equity requires the return of monies to Marriott by the Helman parties. In the Helman parties' view, Marriott's claim to monies paid under the settlement agreements is based on a recission of those agreements, and the Helman parties have not sought such relief. As a result, the Helman parties argue that Marriott has failed to plead a "scenario where equity would require Plaintiffs to return the money RC St. Thomas paid under these settlement agreements."[8] However, Marriott

---

[7] [ECF 110] ¶ 41.

[8] [ECF 121] at 11-12.

need only allege that the circumstances require that monies obtained by plaintiffs at defendants' expense should be returned; Marriott need not, at this juncture, detail the means with which this could occur.

The Court does agree, however, that Marriott has failed to allege circumstances that would make a set-off appropriate. "Set-off requires mutual debts or obligations from different transaction between the same parties." *Willie v. Amerada Hess Corp.*, 66 V.I. 23, 43 (V.I. Super. 2017).[9] Here, Marriott has not identified any current debt or mutual obligation between them and the Helman parties that would support a demand for a set-off. Rather, Marriott simply seeks to reduce future liability should the Helman parties prevail in this case. Thus, Marriott's request for a set-off is stricken. *See id.* (construing a request for a set-off as a demand, which is stricken, rather than a claim, which is dismissed).

### III. CONCLUSION

Accordingly, the premises considered, it is ORDERED that "Plaintiffs' Motion to Dismiss the Marriott Defendants' Counterclaims for Indemnification and Unjust Enrichment" [ECF 121] is DENIED and that Marriott's request for a set-off is stricken.

**Dated:** August 6, 2021

S\_____
RUTH MILLER
United States Magistrate Judge

---

[9] The Court adopts the *Willie* court's *Bank*'s analysis regarding the elements of a set-off.